**Juan LONGORIA and Maria Longoria, Individually and as Next Friends of San Juanita Longoria, Appellants,**

v.

**McALLEN METHODIST HOSPITAL and United Blood Services, Appellees.**

No. 13–88–094–CV.

Court of Appeals of Texas, Corpus Christi.

May 18, 1989.

Rehearing Denied June 15, 1989.

Richard C. Arroyo, Arroyo, Costilla, Stapleton & Uribe, Brownsville, for appellants.

Leo C. Salzman, Carla M. Saenz, Adams & Graham, Harlingen, Terry O. Tottenham, Fulbright & Jaworski, Austin, Mary Sue Ingraham, Fulbright & Jaworski, Houston, for appellees.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

OPINION

SEERDEN, Justice.

Appellants sued appellees in tort after their daughter, San Juanita Longoria, died of acquired immune deficiency syndrome (AIDS) shortly after her fourth birthday. She had been given blood transfusions at McAllen Methodist Hospital shortly after her birth in 1982. The trial court granted appellees' motion for summary judgment, based on affidavits showing, among other things, that there was no standard testing for AIDS in blood in 1982. Appellants have filed a limited appeal, claiming that the summary judgment evidence failed to establish, as a matter of law, that appellees were not liable for the child's contracting of CMV (cytomegalovirus), and that had appellees properly screened blood donors, it may have prevented the child's death. We reverse the judgment and remand the cause for trial.

Plaintiffs' third amended original petition alleged that both appellees were negligent in failing to secure blood that was not

contaminated, failing to use the best available procedure to test the blood for AIDS at the time of the blood transfusions, securing blood from a donor with AIDS or from a donor in a high-risk group for AIDS, and failing to act reasonably in carrying out the duty of care owed the patient. Additionally, the hospital was alleged negligent in failing to inform the parents of the risks inherent in blood transfusion and in failing to keep appraised (sic) of the current status of medical knowledge regarding blood contamination.

Each appellee moved for summary judgment seeking to show that, as a matter of law, there was no negligence. Appellees relied on the affidavits of George Hagney, James W. Langley and John D. Milam, M.D.

Hagney, a blood banking specialist, registered medical technologist, and member of the Society of Clinical Pathologists, stated in his affidavit that he was the hospital's blood bank director in 1982, is familiar with the operation of the blood bank at the time in question, and reviewed the child's 1982 hospitalization records. He reported that all of the blood was obtained from United Blood Services and none was donated at the hospital, that all testing was done before the blood was received, and that each unit of blood bore a label. The affidavit concludes with his opinion that, based on his training, knowledge, and experience, the manner of obtaining and testing the blood given the child met the standard of care which would have been used by a reasonable and prudent hospital in that county or in a similar Texas county.

Langley, a pathologist with a subspecialty in blood banking, states in his affidavit that it was not known in 1982 that the AIDS virus could be transmitted through blood transfusions, and no procedures were available for routine use for testing blood donations for exposure to the AIDS virus. He opines, based on reasonable medical probability, the medical records, and on Hagney's affidavit, that the hospital was not negligent in obtaining the blood, failing to test it for the AIDS virus, or failing to secure blood that was not contaminated, or

in securing blood from a donor who had AIDS or was in a high-risk group for AIDS. He gives a further opinion, "based on reasonable medical probability, that the standard of care of [the hospital] in securing and administering without testing the blood components provided to [the child] met the standard of practice which would have been used by reasonable and prudent hospitals in the community."

John Milam, M.D., a specialist in pathology and blood banking, states in his affidavit that he is familiar with the standard of care used by blood banks and hospitals in 1982, and that it was not standard or customary for blood banks to test blood or donors for AIDS. He states that at the time of the transfusions, AIDS was not generally believed to be blood-borne, and only by 1984 did the medical community reach a consensus that AIDS was transmissible by blood. He also states that scientists first identified the AIDS virus in 1984, that the anitbody test for exposure to the AIDS virus was not approved by the U.S. government until March, 1985, and that use of the test was not mandated for blood banks until July, 1985.

Milam's affidavit also states, "In my opinion, United Blood Services did not breach or fall below the applicable standard of care in 1982 and was not negligent in failing to test the donated blood and blood donors for Acquired Immune Deficiency Syndrome (AIDS). Additionally, in my opinion, United Blood Services did not breach or fall below the applicable standard of care in 1982 and was not negligent in failing to secure blood that was not contaminated with the AIDS virus, assuming that it was so contaminated."

Appellants filed the affidavit of Melvin N. Kramer, Ph.D., who states he also holds a Masters Degree in Public Health and other credentials. Kramer states in his affidavit that his review of the child's medical records showed she had disseminated cytomegalovirus (CMV) as well as AIDS. He stated that before 1982, studies showed that many blood recipients contracted infectious diseases, including CMV, from transfused blood. He stated that serologic test-

ing for CMV was available at the time of the child's transfusion. He stated that the hospital and United Blood Services had a duty to test the blood for CMV antibodies, and reject any CMV positive blood. He stated that if United Blood Services did not screen blood for CMV, then the hospital should have done so when matching the unit of blood.

Kramer's affidavit further states that the individuals who are at increased risk for CMV include many who are at risk for AIDS, namely, homosexuals, bisexuals, and I.V. drug abusers. He opined that it was appellees' duty to exclude members of these groups from the donor pool, and their blood from the transfusion service. He stated that if these high risk individuals had been excluded because of their excess risk of transmitting CMV, hepatitis, and other diseases to the child, then she would not, in his opinion, to a reasonable degree of epidemiological probability, have received either CMV or the AIDS virus which caused her death.

A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists in the plaintiff's cause of action. *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 166–67 (Tex.1987); *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). This may be accomplished by showing that at least one element of the plaintiff's cause of action has been established conclusively against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957, 958 (Tex.1987). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff cannot succeed on any theories pleaded. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues on the essential elements of the cause of action, but whether the summary judgment proof establishes as a matter of law that no issue of material fact exists on one or more

essential elements of the cause of action. *Gibbs*, 450 S.W.2d at 828. Evidence favorable to the non-movant must be taken as true, every reasonable inference must be indulged in favor of the non-movants, and any doubts resolved in favor of the non-movants. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985).

Appellees' summary judgment evidence addresses the question of screening blood or donors for AIDS and includes affiants' conclusions that appellees were not negligent. However, Kramer's affidavit raises the issue of whether the hospital or blood service should have screened the donors or the blood for other diseases and whether such screening would have prevented the child's infection and death. We conclude that appellees failed to establish that they were not negligent as a matter of law.

While appellants' petition specifically mentions AIDS, the pleadings give fair notice that they are complaining of contaminated blood. Any possible deficiency in specifying other diseases could be cured by amending the pleadings. A summary judgment is not proper under these circumstances. *Hill v. Bellville General Hospital*, 735 S.W.2d 675, 677 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Alonzo v. Northern County Mutual Insurance Co.*, 561 S.W.2d 53, 54 (Tex.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.); *Wheeler v. Yettie Kersting Memorial Hospital*, 761 S.W.2d 785, 787 (Tex.App.—Houston [1st Dist.] 1988, no writ); *see Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233, 235 (1957); *Abbott v. City of Princeton*, 721 S.W.2d 872, 874 n. 1 (Tex. App.—Dallas 1986, writ ref'd n.r.e.); *see also Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983).

We sustain appellants' points one and two, REVERSE the trial court's judgment, and REMAND the cause.